**Frank R. LEWIS and Janis K. Lewis, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV–S–95–2308 DFL PAN.**

United States District Court,
E.D. California.

Sept. 24, 1996.

---

S. Ross Kochenderfer, Auburn, CA, for plaintiffs.

Michael J. Desmond, U.S. Department of Justice, Tax Division, Washington, DC, for defendant.

## MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

This case presents the curious question of what proof of timely postmark may be offered by a taxpayer when the Internal Revenue Service (IRS) receives a filing several days after the due date, by first class mail, and does not keep the envelope. According to the IRS, the only proof admissible is "direct" evidence of a timely postmark as opposed to proof of timely mailing from which a timely postmark might be inferred.

Frank Lewis alleges that on April 15, 1993, he timely mailed his application for an automatic extension for filing the Lewises' 1992 tax return. The Internal Revenue Service claims it did not receive the form until April 26, 1993, eleven days after it was due. After the IRS assessed and collected the late penalty, the Lewises filed this refund suit, contending that the application for extension of time to file was timely under 26 U.S.C. § 7502(a), which provides that a timely postmark establishes timely filing. The United States now moves for summary judgment, arguing that the Lewises cannot prove a

timely postmark because they have no "direct" evidence of postmark.

### I.

Frank Lewis claims that he mailed the Lewis' "Application for Automatic Extension of Time To File U.S. Individual Income Tax Return" and five thousand dollars in payment, sometime before noon on April 15, 1993. He attests that he placed the envelope, properly addressed and with postage attached, in a specially designated box at the United States Post Office in Auburn, California. He also avers that he mailed his state tax payment to the Franchise Tax Board at the same time, and there is no dispute that in fact the state tax assessor received his state tax payment on April 16, 1993. The checks to the IRS and Franchise Tax Board are both dated April 15, 1993.

According to United States Postal Service statistics, it should have taken between two to five days for the envelope to reach Ogden, Utah, the designated Internal Revenue Service collection site. A date stamp used by the IRS indicates that the bag of mail containing the Lewises' automatic extension form was "received" April 26, 1996. An IRS declaration states that it was the practice of the IRS Ogden center to stamp all of the mail items in a given bag as received as of the date the bag of mail was delivered by the Postal Service, rather than the date the envelope was opened. However, the Lewises show that they later mailed a different form to the IRS by registered mail, which was signed for by the IRS Ogden center as received on one date, but which was stamped "Received" with a date seven days later.

Neither party offers any "direct" evidence of the postmark. The Lewises do not contend that they actually witnessed a postal employee stamp the envelope. Similarly, the IRS offers no evidence as to what the postmark date on the envelope was, nor can it locate the envelope.

The IRS considered the application for automatic extension as late filed, and denied it on that basis.[1] After the Lewises filed

---

1. Although the Lewises received the bad news from the IRS in May 1993, they did not file their 1992 tax return until September 16, 1993. Thus, if the automatic extension was late (and therefore

their 1992 tax return in September, the IRS assessed a late filing penalty of some $1,442. With interest, the penalty was $1,794 at the time the IRS levied against the Lewises' bank account on June 9, 1995.

## II. Evidence of Timely Postmark

The Lewises and the IRS agree on the basic rule: a tax return, application for extension, or other form is considered filed with the IRS as of the date of the postmark on the envelope containing the form. 26 U.S.C. § 7502(a).[2] A document postmarked by the deadline is thus considered timely, even if it reaches the IRS after the deadline.

The Lewises have produced sufficient evidence to convince a factfinder that their return was timely filed. Frank Lewis states that on April 15, 1993, he mailed the envelope, with the correct address and with sufficient postage, sometime before noon, at the United States Post Office in Auburn, California. His declaration as to timely mailing is corroborated by his history of timely mailing, and his assertion that he mailed the IRS extension and check at the very same time as the state tax form which in fact was received by the state assessor's office on April 16. The United States conceded at oral argument, at least for purposes of this motion, that the Lewises could show that an envelope mailed at the Auburn Post Office before noon would have a postmark of the same date.

Based on this circumstantial evidence, a reasonable jury could find that the application received in Ogden, Utah arrived in an envelope with a postmark dated April 15, 1993.

The United States nevertheless moves for summary judgment, contending that the Lewises cannot present this evidence because it is not "direct" evidence of a timely postmark. The government insists that, at least in the Eighth and Ninth Circuits,[3] a timely postmark can only be proven by (1) the postmarked envelope itself, or (2) direct proof that the postmark was stamped on the envelope, such as testimony of the postal employee who stamped it, or of the taxpayer but only if the taxpayer actually saw the postmark being placed on the envelope. The IRS' position finds some support in *Estate of Wood v. Commissioner*, 909 F.2d 1155 (8th Cir.1990). In *Estate of Wood*, the court held that the statutory mailbox rule of § 7502 was not confined to instances in which the taxpayer either could offer the actual postmark or had used registered or certified mail. The court cautioned, however, that its holding was limited to instances in which the taxpayer had other direct evidence of timely postmark:

> To obtain the benefit of section 7502, the taxpayer must offer proof of postmark— not mere evidence of mailing—as by the

properly denied), the Lewis' 1992 tax return was five months late. If the automatic extension form was timely, however, then the Lewis' 1992 tax return was only a month late—the automatic extension would have given them until August 15. Moreover, the Lewises claim that they would have filed for an additional extension, but the denial of their first application prevented them from so doing. They thus contend that they would have incurred no late penalty at all.

**2.** Section 7502(a) provides in pertinent part:

(a) General rule.—

(1) Date of delivery.—If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return,

claim, statement, or other document, or payment is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.

. . . .

(c) Registered and certified mailing.—

(1) Registered mail.—For purpose of this section, if any such return, claim, statement, or other document, or payment, is sent by United States registered mail—

(A) such registration shall be prima facie evidence that the return, claim, statement, or other document was delivered to the agency, officer, or office to which addressed, and

(B) the date of registration shall be deemed the postmark date.

**3.** In other circuits, the government takes the position that only the actual envelope can be used to show timely postmark. Were this the rule, taxpayers would receive no benefit of the "timely postmarked, timely filed" rule in any instance in which the IRS destroyed or lost the envelope.

testimony of the postal employee who handled and stamped the document. *See, e.g., Rappaport v. Commissioner,* 55 T.C. 709, 711 [1971 WL 2566] (1971), *aff'd,* 456 F.2d 1335 (2d Cir.1972) (evidence of mailing and of "when the envelope ... would have been postmarked in the normal course of business of the U.S. Post Office Department is irrelevant and immaterial and therefore inadmissible."). Moreover, by the terms of the statute, only direct proof of postmark, which proof will be extraordinarily rare outside the instances specified in the statute, will satisfy the requirements of the act.

*Id.* at 1161.

The language cited above is dicta, and it is not persuasive. To begin with, § 7502 does not require "direct" proof of postmark. It specifically addresses the treatment of registered and certified mail in § 7502(c) and provides that the registration shall be deemed the postmark date. But the statute is silent as to other ways in which a taxpayer may prove "the date of the United States postmark." The statute does not draw a dividing line between direct and indirect proof in instances in which the postmark itself is not available and registered or certified mail was not used. Possibly the statute might be interpreted as permitting only the actual postmark or the date of registration to establish the date of the postmark. But once other evidence of the postmark is permitted, as the Eighth Circuit allowed in *Estate of Wood* and the Ninth Circuit allowed in *Anderson v. United States,* 966 F.2d 487 (9th Cir.1992), the statute provides no support for a distinction between "direct" evidence and equally reliable "indirect" evidence of the date of the mailing and thus of the postmark.

Further, the distinction suggested by *Estate of Wood* is inconsistent with the weight of precedent. The court's reliance upon *Rappaport,* 55 T.C. at 711, is particularly unfortunate given that *Rappaport* had already been overruled by *Sylvan v. Commissioner,* 65 T.C. 548, 555, 1975 WL 3165. *See Ruegsegger v. Commissioner,* 68 T.C. 463, 1977 WL 3717 (1977). Circumstantial proof of timely postmark has long been accepted in cases in which the IRS has lost or destroyed

the envelope. In particular, proof of mailing at a time early enough to receive a timely postmark (or be timely received by the IRS) has been found sufficient in several cases. *See Crosby v. Commissioner,* 1986 WL 34348 (N.D.Cal.1986) (finding timely filing based on habit of timely filing and specific recollection of timely mailing); *Thompson v. Commissioner,* 66 T.C. 737, 739–42, 1976 WL 3734 (1976) (finding timely filing based on evidence of time of mailing and local postmarking policy); *Kralstein v. Commissioner,* 38 T.C. 810, 820 (1962) (finding timely mailing presented prima facie case of timely filing; Commissioner "presented no rebuttal evidence ... and failed to produce the envelope in which the return was received."); *Oppenheimer v. Commissioner,* 16 T.C. 515, 527 (1951) (finding evidence of habit of timely mailing sufficient, even though no personal recollection of timely mailing); *Jacobson v. Commissioner,* 73 T.C. 610, 616, 1979 WL 3738 (1979) (extrinsic evidence to prove timely postmark includes "actual time of mailing, since the reasonable inference is that mail is postmarked on the day it is received by the postal authorities"; however, taxpayer did not prove when return was mailed); *cf. Alexander v. United States,* 1993 WL 216773 (D.S.C.1993) (finding timely filing based on (1) timely simultaneous state return; (2) taxpayer testimony on timely mailing; and (3) general knowledge that IRS loses tax returns). *See also Hotel Equities Corp. v. Commissioner,* 65 T.C. 528, 529 n. 3, 1975 WL 3053 (1975), *aff'd,* 546 F.2d 725 (7th Cir.1976) (assuming timely postmark based on timely mailing where IRS conceded it destroyed envelope).

The Tax Court has noted the "inherent unfairness of not considering indirect evidence of a timely postmark, i.e., timely mailing, when the only direct evidence was destroyed by [the IRS]." *Thompson,* 66 T.C. at 742 n. 4. Indeed, the court has drawn an inference of timely mailing from the IRS' failure to preserve the envelope:

> If the return had not been timely mailed, preservation of the envelope by the [IRS] would have been the normal course for them to take. Since the respondent failed to produce the envelope, it may reasonably

be assumed, we think, that he did not preserve it because it was of no value as evidence.

*Oppenheimer,* 16 T.C. at 527.

Similarly, where the envelope is retained by the IRS, but has no postmark or an illegible postmark, the taxpayer has been allowed to prove the date of mailing to show compliance with § 7502(a). In *Skolski v. Commissioner,* 351 F.2d 485, 487 (3rd Cir. 1965), the postmark was illegible, and the taxpayer was therefore allowed to submit evidence of timely mailing to prove what the postmark's date would have been. *Cf.* 26 C.F.R. § 301.7502–1(c)(iii)(a). The court reasoned that "[t]o hold otherwise would be to narrow the scope of section 7502(a) to a fortuitous application wholly dependent upon the care with which postal employees affixed postmarks and thus unwarrantedly defeat in part its remedial purposes." *Id.* at 488. In *Sylvan v. Commissioner,* 65 T.C. 548, 1975 WL 3165 (1975), the envelope arrived at the IRS with no postmark at all. In the absence of any congressional intent, the Tax Court found that this circumstance should not be treated differently from cases of an illegible postmark or cases in which the postal service took the form from a damaged envelope and put the form into a new, unpostmarked one. *Id.* at 552–54. Evidence as to timely mailing was therefore admissible to establish a timely postmark. *Id.*

Although the Ninth Circuit has not addressed the precise question, its decision in *Anderson v. United States,* 966 F.2d 487 (9th Cir.1992), is consistent with allowing both direct and circumstantial evidence to prove a timely postmark where the envelope is lost by the IRS. The court defined the issue in *Anderson* as "whether extrinsic evidence, i.e.,

evidence other than a postmark or postal receipt ... is admissible to prove that Anderson's 1984 federal tax return was postmarked before April 15, 1988." *Anderson,* 966 F.2d at 489. The court answered this question in the affirmative, holding that "section 7502 does not set forth an exclusive limitation on admissible evidence to prove timely mailing.... " *Id.* The court considered both the taxpayer's testimony that she saw the postal employee postmark the return, and the taxpayer's companion's affidavit that she saw the taxpayer enter the post office with the envelope and return without it. *Id.*

Finally, the proposed distinction between direct and circumstantial proof serves no purpose; it fails to distinguish between reliable and unreliable evidence and it leads to arbitrary and unjust results. Were this distinction applied to the facts in *Anderson,* the companion's testimony that the taxpayer entered the post office with her return would be inadmissible on the issue of timely postmark. That would leave only the taxpayer's testimony that she recalled seeing the postal employee postmark the envelope. on a certain date several years earlier.[4] This evidence is certainly no more persuasive than the extensive circumstantial evidence presented by the Lewises: their timely state tax filing, Mr. Lewis' habit of timely filing, his specific recollection of mailing the return in a specially designated box, the date on the check, and the undisputed fact that the form did in fact arrive.[5] Moreover, it would be arbitrary to distinguish between the taxpayer who mails her return at the postal window and the taxpayer who mails his return in a special box for tax returns inside the post office. And it is unfair that the IRS' failure

---

4. It is unclear from the court's opinion whether direct evidence truly existed at all in *Anderson.* The court does not indicate whether Anderson saw the date "September 15, 1986" stamped on the envelope. If she saw only the act of postmarking, but not the date itself, her evidence would be classified as circumstantial, rather than direct, since the postal employee may have stamped the wrong date. *See Randle v. LaSalle Telecommunications, Inc.,* 697 F.Supp. 1474, 1478 n. 3 (N.D.Ill.1988), *aff'd,* 876 F.2d 563 (7th Cir.1989) (citing *Wigmore on Evidence,* § 24 n. 5 at 948–49 (direct evidence is evidence which, if believed, is consistent only with the proposed

conclusion; if more than one conclusion is consistent with the evidence, then the evidence is circumstantial)). For the application of § 7502(a) to depend on such a distinction would subvert Congress' purpose of creating a simple system for the filing of federal tax documents.

5. Wigmore's treatise on evidence notes that circumstantial evidence "may be as persuasive and as compelling as testimonial evidence, and sometimes more so.... " *Wigmore on Evidence,* § 26 at 961.

to preserve the envelope should so severely disadvantage a taxpayer who has the misfortune to have missed or forgotten the postmarking ceremony.

### III.

Because the Lewises have sufficient admissible evidence to convince a reasonable fact finder that the envelope containing their Application for Automatic Extension was postmarked April 15, 1993, the United States' motion for summary judgment is DENIED.[6]

IT IS SO ORDERED.

---

**6.** The Lewises also move for summary judgment. Plaintiffs argue that when the IRS loses the envelope the burden should shift to the government to prove that the postmark was not timely. Plaintiffs argue that the government cannot meet this burden on the facts here.

Plaintiffs' motion is denied. Section 7502 does not provide that the IRS must keep envelopes. It does not direct that if the agency fails to keep the envelope or make a record of the postmark that the burden of proof will be shifted to the agency. The section is not a record-keeping provision, and the court declines to impose record-keeping duties by creating a presumption against the agency or shifting the burden of proof. Possibly an adverse inference may be drawn against the IRS for failing to keep material evidence within its possession. But the appropriateness of such an inference was neither briefed nor argued. Because there is some evidence that the letter was not timely mailed—principally the date of receipt—summary judgment for plaintiffs must be denied.