IN THE OREGON TAX COURT
MAGISTRATE DIVISION

DIRECT IMPORTS, INC.,
*Plaintiff,*

*v.*

MULTNOMAH COUNTY ASSESSOR
and Department of Revenue,
*Defendants.*

(TC-MD 991077A)

W. Scott Phinney, Lake Oswego, argued the cause for Plaintiff.

John Thomas, Multnomah County Assistant County Counsel, argued the cause for Defendant (the county).

Douglas M. Adair, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision rendered June 14, 2000.

**SCOT A . SIDERAS, Presiding Magistrate.**

Plaintiff petitioned the Department of Revenue (the department) as to property, located in Multnomah County (the county) and identified by Account No. R-66772-3220, for the 1995-96 and 1996-97 tax years. Plaintiff's request was that the agency use its supervisory power, set out in ORS 306.115,[1] to consider the merits of Plaintiff's claim that its assessed values are excessive. The agency refused. This appeal followed. Pursuant to Magistrate Division Rule 6(A) and Regular Division Rule 47, Plaintiff and Defendants made motions for summary judgment. Defendants' motions are granted. Plaintiff's motion is denied.

## STATEMENT OF FACTS

The subject property is an office and retail complex known as the Galleria, located at 921 SW Morrison St. in Portland. Plaintiff asserts that for each tax year its real market value did not exceed $3,900,000, a sum just more than half its value on the rolls.

The agency held a hearing to inquire into this request that it apply its supervisory power. Plaintiff was represented by at least one counsel in this proceeding; it had two witnesses testify.[2] The county was represented by its counsel; its appraiser received extensive cross examination. The proceeding lasted approximately two hours. Both parties engaged in opening and closing statements as well as additional argument.

In relevant part the subsequent opinion and order denying Plaintiff's request recited "[t]here was no agreement to facts by the county * * * [t]here is no agreement that the

---

[1] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 1999.

[2] The record shows Plaintiff was allowed to complete its direct examination of its witnesses and, when it chose, make use of redirect. Plaintiff's witness was allowed to testify in the face of Defendant's objection.

property was incorrectly valued by both parties and no agreement to facts."[3] The opinion and order, in both its caption and its discussion, only mentions the 1995-96 tax year. However, both Plaintiff's Complaint (paragraph 2) and Defendants' Answers (paragraph 1 of each) demonstrate the parties believe that the agency refused to exercise its supervisory power for the 1996-97 tax year as well.[4]

Plaintiff asserts that the department abused its discretion when it found Plaintiff and the county did not agree to facts that indicate it is likely that an error exists on the roll. Plaintiff presents the following points as agreed-upon facts; Defendants' response is shown immediately opposite.

Plaintiff argues that Multnomah County, during the hearing before the agency, tacitly agreed that the following facts show it is likely that an error exists on the roll—

Defendants assert that, during the hearing before the agency—

• that while the property has a gross building area of covering 200,000 sq. ft., its net rentable area is only 126,000 sq. ft., for an efficiency of only 63 percent.

• Multnomah County presented this as a factor already considered in its appraisal of the building.

• that the property was built in 1910, reconfigured in 1975, and has a highest and best use as a redevelopment project, at a cost of over $9,600,000 (which

• Multnomah County said it did not agree with the determination of highest and best use, or with the opinions as to costs.

---

[3] *In re Direct Imports, Inc.,* Opinion and Order No. 98-0201 (Apr 7, 1999) at 2.

[4] Plaintiff's initial request to the agency, set out in its petition of June 30, 1998, requested Defendant to apply its supervisory power as to both the 1995-96 and 1996-97 tax years. That the 1996-97 tax year was also before the agency is confirmed by its acknowledgment letter and hearing notices.

includes needed measures for ADA compliance and seismic retrofits);

• that the roof, elevators, escalators, and HVAC system need repairs, upgrading, or replacement;

• Multnomah County presented these factors as already considered in its appraisal of the building.

• that the overall condition of the building is below that of its competition, which, combined with the move of Portland's retail core, has caused a declining tenant base and problems in collecting rents;

• Multnomah County presented these factors as already considered in its appraisal of the building.

• that the property's pretax operating expenses were $878,224 ($6.97 per sq. ft.) in 1996 and $1,014,555 ($8.05 per. sq. ft.) in 1995; and

• Multnomah County did not agree that these expenses were typical for the property.

• that the property has only 55 parking spaces.

• Multnomah County presented this as a factor already considered in its appraisal of the building.

Plaintiff asserts that Multnomah County, during the hearing before the agency, explicitly agreed that the following facts show it is likely that an error exists on the roll—

Defendants assert that, during the hearing before the agency—

• that the roll value of the property was calculated using a mass appraisal process, which arrived at a

• Multnomah County neither agreed with this characterization of the appraisal process, nor

net operating income of $879,330, in contrast to the actual net income of $603,145;

that this net income was typical.

• that the 1995-96 and 1996-97 roll values of the property are respectively 27 percent and 31 percent higher than the 1997-98 roll value;

• Multnomah County asserted that each tax year stands on its own.

• that the subject property is unique, and carries functional obsolescence, for which no specific adjustment was made in calculating the 1996-97 value;

• Multnomah County presented this characteristic as having been considered as part of its appraisal.

• that the county has no information to contradict the testimony presented by Plaintiff;

• Multnomah County agreed that it had no information to contradict the testimony, but did not endorse the testimony.

• that the value of the property on the tax roll is wrong.

• Multnomah County presented this remark as an anecdote by its counsel, subsequently withdrawn.

An additional point raised by Plaintiff is that the department's conference officer improperly placed time pressures on Plaintiff, erred in not requiring the county's witness to answer questions properly, and interfered by assisting the county's witnesses during their testimony.

## ANALYSIS

The court has a number of specific criticisms of the department's decision-making in this appeal. These are:

1. *The opinion and order of the department did not explicitly address the 1996-97 tax year.* Plaintiff's petition to the agency clearly identified that Plaintiff wished the department to apply its power under ORS 306.115 to hear the

merits of its appeals as to both the 1995-96 and 1996-97 tax year. The department's decision not only omits the 1996-97 tax year but also attributes events to the 1996-97 tax year that in fact occurred during the 1997-98 tax year.[5]

　　2.　*The opinion and order of the department does not make findings of fact.* Instead, the document recites, in an extremely conclusory manner, the history of what was said to the conference officer.

　　3.　*The opinion and order mentions an incorrect standard:* The decision recites that "[t]here [was] no agreement that the property was incorrectly valued by both parties."[6] While the opinion and order does subsequently rely on the correct test, whether the parties agreed to facts that indicate it is likely that an error exists on the roll, the reference is disturbing.

■ ■　　4.　*Neither the department's administrative rule implementing its supervisory power, nor its opinion and order, explain the criteria used by the agency in its decision making.* The department was given a broad grant of power in ORS 306.115.[7] The agency has chosen to limit this discretionary power through its administrative rule, OAR 150-306.115.

---

[5] *In re Direct Imports, Inc.*, describes in its first and third paragraphs of page 1 an appeal to the board of equalization that in fact did not occur until a later tax year.

[6] *In re Direct Imports* at 2.

[7] ORS 306.115 provides, in relevant part, that:

"(1) The Department of Revenue shall exercise general supervision and control over the system of property taxation throughout the state. The department may do any act or give any order to any public officer or employee that the department deems necessary in the administration of the property tax laws so that all properties are taxed or are exempted from taxation according to the statutes and Constitutions of the State of Oregon and of the United States. Among other acts or orders deemed necessary by the department in exercising its supervisory powers, the department may order the correction of clerical errors, errors in valuation or the correction of any other kind of error or omission in an assessment or tax roll as provided under subsections (2) to (4) of this section.

"* * * * *

"(3) The department may order a change or correction applicable to a separate assessment of property to the assessment or tax roll for the current tax year and for either of the two tax years immediately preceding the current tax year if for the year to which the change or correction is applicable the department discovers reason to correct the roll which, in its discretion, it deems necessary to conform the roll to applicable law without regard to any failure to exercise a right of appeal.

That rule makes clear that, in instances such as that presented by Plaintiff, the decision to hold a hearing to consider the merits of a valuation appeal will depend upon whether, in the department's view, the parties to the petition agree to facts that indicate it is likely that an error exists on the roll. OAR 150-306.115(3)(b)(A)(ii).[8] However, at no point does the department explain, either in its rule or its decision, the criteria it is applying when it tests for whether the parties "agree" to "facts" which indicate it is "likely" that there is an "error."[9]

Those criticisms are striking. Nonetheless, whether they are so condemning as to call for a remand to the agency or Plaintiff's more extreme requests depends upon an application of the following tenets:

## 1. The department's power under ORS 306.115[10] is discretionary. *Resolution Trust Corp. v. Dept.*

---

"(4) Before ordering a change or correction to the assessment or tax roll under subsection (3) of this section, the department may determine whether any of the conditions specified in subsection (3) of this section exist in a particular case. If the department determines that one of the conditions specified does exist, the department shall hold a conference to determine whether to order a change or correction in the roll.

"(5) For purposes of this section, 'current tax year' means the tax year in which the need for the change or correction is brought to the attention of the department.

"(6) The remedies provided under this section are in addition to all other remedies provided by law."

[8] Other portions of OAR 150-306.115 define the agency's powers as to instances of "good and sufficient cause" (OAR 150-306.115(3)(a)) and "extraordinary circumstances" (OAR 150-306.115(3)(b)(A)(i)), neither of which are relevant here.

[9] These points are more disturbing than this brief discussion indicates. How much consent, grudgingly given, is needed for an "agreement?" Is the agency, in its test for "facts," distinguishing, or relying, on opinion? How great a quanta of proof is required for "likely," and if it is "likely" that the roll is wrong by even a small amount, has the Plaintiff shown an "error." Even under a discretionary standard, those questions are important.

[10] ORS 306.115 provides, in part:

"(3) The department **may** order a change or correction applicable to a separate assessment of property to the assessment or tax roll for the current tax year and for either of the two tax years immediately preceding the current tax year if for the year to which the change or correction is applicable the department discovers reason to correct the roll which, in its **discretion**, it deems necessary to conform the roll to applicable law without regard to any failure to exercise a right of appeal."

(Emphasis added.)

*of Rev.*, 13 OTR 276, 278 (1995) and *Eyler v. Dept. of Rev.*, 14 OTR 160, 162 (1997).

**2. The department has promulgated a rule saying when it will exercise its discretion, and that rule has survived judicial scrutiny.** *See Resolution Trust Corp.,* 13 OTR at 278.

**3. Review of the discretionary act of the department under the rule is according to the standard of whether it was capricious or clearly wrong.** *Resolution Trust Corp.*, 13 OTR at 278-79.

**4. In weighing whether the parties to the petition agree to facts that indicate it is likely that an error exists on the roll, the ultimate question is whether or not the parties *unequivocally agreed* to facts that indicate it is likely that an error exists on the roll.** *Eyler,* 14 OTR 160.

When those tenets are applied in the analysis of this case the court is persuaded that although the criticisms of the department's decision making are certainly well founded, the court cannot say that the department was capricious or clearly wrong when it found no unequivocal agreement[11] on the part of the county. Plaintiff apparently succeeded, insofar as this court's review of the record before the department demonstrates, in showing it was likely that there was error in the subject property's assessment.[12] However, the criteria is not whether **error** exists, but whether there was an **agreement** as to facts. This court has previously decided that neither the statute nor the administrative rule force the assessor to even consider facts. *Ohio State Life Ins. Co. v. Dept. of Rev.*, 12 OTR 423, 427 (1993). So long as the assessor does not

---

[11] The court finds as a matter of fact that Multnomah County did not agree with Plaintiff that there were facts that indicate it is likely that an error exists on the roll. The most that can be said is either that Multnomah County was equivocal in its responses, in the manner of *Eyler,* 14 OTR 160, or that Multnomah County did not contest all of Plaintiff's proofs, which, again, is short of agreement.

[12] It must be noted that the court is not saying that the property has been shown to have been overassessed. Instead, it is identifying Plaintiff's case as of a different character than Multnomah County's. Plaintiff focused on asserting errors in the assessment. Multnomah County did not defend the roll so much as avoid agreement.

have a duty to consider information submitted after the regular appeal period has expired, the focus of the court is not whether an assessor ought to have agreed, but whether the assessor did agree. *Id.* at 427.

The department's two-hour proceeding, with examination of witnesses and argument, was adequate to explore the issue of whether or not the county agreed to facts.[13] The department's opinion and order, albeit confusedly, nonetheless applied the correct standard, that of testing for an agreement as to facts that indicate it is likely that an error exists on the roll. Although it is regrettable that the opinion and order neglected the 1996-97 tax year, the court sees no purpose in remanding the matter to the department for that specific point, as all parties have unequivocally established that they view the decision as a refusal of the department to apply its supervisory power to that year as well.[14] Plaintiff's remaining argument was that the board of equalization did lower the roll value of the property for the 1997-98 tax year. Other cases have discussed that point and found a board order reducing the assessment of the property in a subsequent tax year to be an inadequate basis for invoking the supervisory power. *Jones v. Dept. of Rev.*, 12 OTR 237 (1992), *aff'd*, 315 Or 497, 847 P2d 407 (1993).

## CONCLUSION

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal must be denied.

---

[13] Along similar lines, this court has repeatedly stated proceedings under ORS 306.115 are not so much an appeal from an action of an assessor or board as an opportunity for the department to discover a reason to correct the tax roll. *FSLIC v. Dept. of Rev.*, 11 OTR 389, 391 (1990) and *McGill v. Dept. of Rev.*, 14 OTR 40, 42 (1996).

[14] Depending upon the specifics of the case, the court might not reach this same result in a similar appeal. A particularly important point here is that Plaintiff and Defendants agreed that the evidence as to all years was identical, and the agency's strong argument that the mistake as to the 1996-97 tax year may be that of a clerical error.